**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| CHRISTINE L. GRABBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08-2281-JAR/GLR |
| v. | ) | |
| | ) | |
| QUEST DIAGNOSTICS INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Quest Diagnostics Incorporated's

Motion for Summary Judgment (Doc. 48). In this action, plaintiff Christine Grabbe brings four

claims against her former employer: (1) retaliation in violation of the Family and Medical Leave

Act of 1993 ("FMLA"), 29 U.S.C. § 2611 *et seq.*; (2) FMLA interference; (3) workers'

compensation retaliation under Kansas law; and (4) "whistleblower" retaliation under Kansas

law. The Court has considered the arguments set forth in the parties' briefs along with the record

submitted and is now prepared to rule. For the reasons stated below, the Court grants in part and

denies in part defendant's motion for summary judgment.

## I.      Uncontroverted Facts

### A.      Evidentiary Objections

Defendant objects to plaintiff's statement of additional facts on the basis that certain

supporting exhibits are "inadmissible hearsay." Defendant does not, however, explain this

boilerplate objection. Under Fed. R. Evid. 801, "hearsay" is defined as "a statement, other than

one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." When deciding a summary judgment motion, the Court may

consider evidence submitted, if admissible in substance, even if it would not be admissible in

form, at the trial.[1] The Tenth Circuit has explained how hearsay affects evidence at the summary

judgment stage,

> Parties may, for example, submit affidavits in support of summary
> judgment, despite the fact that affidavits are often inadmissible at
> trial as hearsay, on the theory that the evidence may ultimately be
> presented at trial in an admissible form. Nonetheless, "the content
> or substance of the evidence must be admissible." Thus, for
> example, at summary judgment courts should disregard
> inadmissible hearsay statements *contained* in affidavits, as those
> statements could not be presented at trial in any form. The
> requirement that the substance of the evidence must be admissible
> is not only explicit in Rule 56, which provides that "[s]upporting
> and opposing affidavits shall . . . set forth such facts as would be
> admissible in evidence," Fed. R. Civ. P. 56(e), but also implicit in
> the court's role at the summary judgment stage. To determine
> whether genuine issues of material fact make a jury trial necessary,
> a court necessarily may consider only the evidence that would be
> available to the jury.[2]

Both parties raise certain objections to the opposing party's evidence on the basis that the

declarant lacks personal knowledge. Fed. R. Evid. 602 requires that a testifying witness "ha[ve]

personal knowledge of the matter" testified to.[3] "Under the personal knowledge standard, an

affidavit is inadmissible if 'the witness could not have actually perceived or observed that which

he testifies to.'"[4] Statements of "mere belief in an affidavit must be disregarded."[5] Therefore,

---

[1]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[2]*Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995); Fed. R. Civ. P. 56(e)) (citations omitted).

[3]Fed. R. Evid. 602.

[4]*Argo*, 452 F.3d at 1200.

[5]*Id.* (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

whenever either party has made statements of fact on the basis of testimony that did not show any basis for personal knowledge, the Court disregarded those statements.[6]

Defendant argues that plaintiff's Exhibits 2, 6, 7, 8, and 14 are hearsay. Exhibit 2 is a letter from plaintiff's health care provider faxed to Larry Kincaid at Quest Diagnostics on September 22, 2006. Plaintiff offers the letter to show that the employer had notice of plaintiff's health condition, rather than to show the precise nature of the injury plaintiff is alleged to have suffered. Thus, it is not hearsay because it is not being offered for the truth of the matter asserted therein.

Defendant similarly objects to Exhibits 6, 7, and 8, three letters from the Occupational Safety and Health Administration ("OSHA") to Quest Diagnostics. For the same reasons explained above, the Court finds the substance of these letters is not hearsay. They are not being offered to show the truth of the matter asserted (*i.e.*, what conditions actually existed at Quest Diagnostics and whether those conditions violated any particular law), but to show that Quest had notice from OSHA that complaints were being made about Quest's work conditions by one of its employees, and that OSHA apparently considered the complaints serious enough to contact the employer. Thus, these exhibits are not hearsay, and the Court overrules defendant's objection on this basis.

Exhibit 14, entitled "Claimant's Separation Statement," is a form plaintiff allegedly filed with the Kansas Department of Labor as part of an application for unemployment benefits. In the document, plaintiff explained that her separation from Question Diagnostics was not

---

[6]For instance, plaintiff's statement of fact ¶ 66 lists persons she believed knew of her third and final workers' compensation claim. However, in the deposition, plaintiff's basis of knowledge about what others knew of her workers' compensation claim was unclear, and she retracted some of her answers. Defendant objected that her testimony was "speculative."

voluntary. Defendant objects to this as hearsay. Plaintiff, however, is not offering the document to demonstrate that her separation was involuntary, but is offering the document to show that she has *consistently* disputed Quest's grounds for her termination.[7] Although the parties are not yet at trial, plaintiff has offered sworn deposition testimony on this issue where she was subject to cross-examination. It appears, therefore, that Exhibit 14 is plaintiff's prior consistent statement, which plaintiff is offering to rebut defendant's implied charge that her story has been recently fabricated. Thus, the Court finds plaintiff's prior consistent statement is not hearsay under Fed. R. Evid. 801(d)(1)(B),[8] and defendant's objection is overruled.

Defendant also objects to Exhibit 16, a written decision by an unemployment insurance judge granting plaintiff unemployment benefits on the basis of certain findings. The Court agrees with defense counsel that such a ruling does not have the force of collateral estoppel on the question of whether plaintiff was discharged from employment due to misconduct connected with her work.[9] However, to the extent plaintiff is using the exhibit to demonstrate that plaintiff

---

[7]Defendant repeatedly alleged that it is "undisputed" that plaintiff left Quest "voluntarily" and any claim to the contrary is plaintiff's "newly-minted assertion." (Doc. 49 at 20; Doc. 82 at 5). Plaintiff's statement of fact ¶ 65 (supported by Exhibit 14) merely states, "Ms. Grabbe disputed the basis for the 'Corrective Counseling Action' of April 26, 2007 and the 'Corrective Counseling Action' of June 27, 2007 in her 'Claimant's Separation Statement' of July 6, 2007 for her claim of unemployment benefits to the Kansas Department of Labor." Plaintiff does not use the document to discuss the basis of her claims, rather, she uses it to show her consistency. Plaintiff's employment ended June 28, 2007, this prior statement was made on July 6, 2007, and the present lawsuit was not filed until June 19, 2008 (Doc. 1).

[8]Fed. R. Evid. 801(d)(1) provides in relevant part, "A statement is not hearsay if . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication . . . ."

[9]*See Wessel v. Enersys, Inc.*, No. 03-4089-SAC, 2005 WL 1863098, at *2 (D. Kan. July 6, 2005) (noting that Kansas unemployment insurance proceedings are "unique and different from other judicial proceedings," especially noting "the informal nature of these proceedings, the distinct burden of proof placed on the employer to prove employee misconduct, and the apparent unfairness in requiring parties to litigate ultimate issues in a proceeding where they may lack the incentives to litigate them fully."); *see also Zimmerman v. Sloss Equip., Inc.*, 72 F.3d 822, 826 (10th Cir. 1995).

received unemployment benefits, the document is admissible and will be considered for this limited purpose.

As a final note, plaintiff has attempted to controvert statements of fact which she previously stipulated to in the Pretrial Order. Federal Rule of Civil Procedure 16 states that the Pretrial Order, once entered, "controls the course of the action unless the court modifies it,"[10] and any modification should only be made "to prevent manifest injustice."[11] One of the express purposes of the Pretrial Order is to "obtain[] admissions and stipulations about facts and documents to avoid unnecessary proof."[12] Under Tenth Circuit precedent, the Pretrial Order supersedes all previous pleadings and controls the subsequent course of the litigation.[13] "The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur."[14] Plaintiff stipulated to these facts in the Pretrial Order after the close of discovery, and has not moved to withdraw her stipulations or to amend the Pretrial Order.[15] Furthermore, plaintiff has not stipulated to whether she gave notice to anyone before leaving

---

[10]Fed. R. Civ. P. 16(d).

[11]Fed. R. Civ. P. 16(e).

[12]Fed. R. Civ. P. 16(c)(2)(C)–(D).

[13]*E.g.*, *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997) (citing *Hullman v. Bd. of Trustees*, 950 F.2d 665, 668 (10th Cir. 1991)).

[14]*Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002).

[15]*See Glover v. NMC Homcare, Inc.*, 13 F. App'x 896, 902–03 & n.6 (10th Cir. 2001) (holding that non-moving party on summary judgment was bound to its stipulation of fact in the Pretrial Order, where the stipulation was clear and unambiguous and the Order was entered after the close of discovery); *Hullman v. Bd. of Trustees of Pratt Community Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) ("[I]ssues not preserved in the pretrial order have been eliminated from the action, and a party who did not preserve an issue may not use it in resisting a motion for summary judgment."); *In re Durability, Inc. v. Sovereign Life Ins. Co. of Cal.*, 212 F.3d 551, 556 (10th Cir. 2000) (holding that, pursuant to Fed. R. Civ. P. 36, a non-moving party may be relieved of a stipulation of fact made during discovery if the Pretrial Order had not yet been entered and discovery had not yet been completed at the time the opposing party moved for summary judgment).

work on June 22, 2007.  Thus, the Court finds that denying amendment of the stipulated facts in the Pretrial Order would not result in manifest injustice.  The Court overrules plaintiff's objections to the facts stipulated to in the Pretrial Order, and treats those facts as uncontroverted for purposes of summary judgment.[16]

### B.     Undisputed Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to the plaintiff.[17]

Defendant Quest Diagnostics, Inc. ("Quest") is a leading provider of diagnostic laboratory testing, information and services worldwide.  On April 10, 2000, plaintiff commenced employment as an Applicant Record Entry Operator, which was a data entry position, at a base salary of $10.00 per hour, at Quest's Lenexa, Kansas facility.  Approximately during the fall of 2005, after occupying a series of other non-supervisory positions, plaintiff transferred to Quest's Imaging Department and assumed a "prepping" position, which primarily involved preparing insurance paperwork (*i.e.*, removing staples, taping down bar codes and like tasks) for electronic scanning.  Although her job duties did not change, on December 12, 2006, plaintiff's job title became Operator/Data Entry II-Billing.[18]

---

[16]*See Jonker v. Melvin Simon & Assocs., Inc.*, No. 86-1654, 1989 WL 31402, *4 (D. Kan. Mar. 1, 1989) (holding that a party's decision to stipulate to facts in the Pretrial Order is a decision to waive any challenges or defenses to that stipulated fact; "To allow defendants to still assert these issues would render meaningless the literal terms of their stipulation."); *see also Wilson v. Sedgwick County Bd. of County Comm'rs*, No. 05-1210-MLB, 2006 WL2850326, at *6 (D. Kan. Oct. 3, 2006) (denying a motion to amend the pretrial order where plaintiff merely sought "to prevent a judgment not in his favor"; "The prevention of manifest injustice is not concerned with counsel's desire to avoid an unfavorable ruling").

[17]The Court has disregarded facts that are immaterial, statements of law couched as "fact," argument by the parties, or statements not supported by the record.

[18]Defendant states as fact that plaintiff was employed "at will," but only supports this assertion with a citation to plaintiff's deposition transcript, wherein plaintiff was asked whether she understood her employment was "at will."  Plaintiff appeared to be confused as to what rights she had as a Quest employee.  Thus, the Court does not

Throughout her tenure with Quest, management granted plaintiff annual raises.  Between the time her employment with Quest commenced on April 10, 2000, and her employment ended on June 28, 2007, plaintiff's base salary steadily increased from $10.00 per hour to $13.89 per hour, an almost 40% increase.  In addition to increasing plaintiff's base pay, Quest also awarded her regular bonuses.  Quest never reduced plaintiff's pay or benefits, nor denied plaintiff any bonus to which she believed she was entitled.  Likewise, at no time did Quest ever suspend or demote plaintiff.

### *FMLA Leave*

Over more than seven years of employment with Quest, plaintiff applied to take intermittent leave under the FMLA on five separate occasions, which Quest approved each time.  No one at Quest ever discouraged plaintiff from pursuing FMLA leave, nor did anyone ever prevent plaintiff from returning to work in connection with an approved leave.  Throughout periods in which plaintiff utilized approved FMLA leaves, she continued without interruption in the same job positions.  She never experienced any cut in pay or benefits and never experienced discipline of any kind as a result of exercising her FMLA rights.[19]

On September 22, 2006, plaintiff's health care provider faxed a note to Quest stating that "Any overtime will be at patient discretion – unable to do."  On December 14, 2006, Keva Russell signed plaintiff's "Family Medical Leave Application," and in January 2007, Larry Kincaid of Quest notified plaintiff that her FMLA application was approved on an intermittent basis from November 13, 2006 through November 12, 2007.  In the "Certification of Health Care

---

consider plaintiff's testimony sufficient to support defendant's statement of fact.

[19]Defendant also notes that plaintiff does not know of any co-workers at Quest who were prevented from exercising their FMLA rights.  However, this fact is immaterial as plaintiff is not arguing "similarly situated."

Provider," signed on February 27, 2007, plaintiff's health care provider stated that plaintiff could not work over forty hours weekly from August 21, 2006 through approximately August 21, 2007.

### Workers' Compensation Claims

During her employment with Quest, plaintiff filed a total of three workers' compensation claims. She filed her first workers' compensation application on July 8, 2002, almost five years before her separation from Quest's employ. She filed her second workers' compensation claim on September 15, 2005, nearly two years before leaving Quest. And she filed her third and final workers' compensation claim on April 4, 2006, nearly fourteen months before her departure.

As with her five requests for FMLA leave, no one at Quest ever discouraged plaintiff from filing a workers' compensation claim.[20] Plaintiff was not disciplined as a result of her workers' compensation claims. She was unaware of any other Quest employees who were allegedly terminated for exercising the right to file workers' compensation claims. Jaime Krehbiel signed the "Employer's Report of Accident" on August 15, 2005 for plaintiff's claim for workers' compensation. In the fall of 2006, plaintiff overheard Krehbiel state to another person, "why do you want her, she can't do anything, she is disabled."

### OSHA Complaints

On three separate occasions during her employment, on November 16, 2006, March 8, 2007, and April 26, 2007,[21] plaintiff initiated telephone calls to OSHA regarding her working

---

[20]Defendant alleges that plaintiff applied for workers' compensation without any "interference" by her employer. The deposition excerpts cited do not support this broad statement, which is also a statement of law.

[21]These dates were stipulated to in the Pretrial Order. (Doc. 47 at 4). However, in the letters from OSHA (attached to plaintiff's response), OSHA stated it received notice of problems on November 13, 2006, March 8, 2007, and April 6, 2007. These dates do not match those given by the parties. The Court will assume the facts

conditions. Plaintiff made her first telephone call to OSHA anonymously. Plaintiff told no one at Quest about any of her communications with OSHA. Although plaintiff did not specify what law, rule, or regulation she believed Quest had violated, she stated the reasons for her complaints. Over the course of her three phone calls, plaintiff complained about (1) a sticky substance on the floor and a "chemical odor" at her work station relating to a nearby renovation; (2) extension cords laid out across the workroom floor, which she believed caused an "electrical system," "fire," and "tripping" "hazard," and the presence of "only" one workroom entrance and exit; and (3) that there was a female bathroom that plaintiff believed was "[f]ilthy, disgusting" and created a health hazard. It is undisputed, however, that plaintiff and her co-workers were able to use an alternative restroom during the period the female restroom was unusable.

In each instance, the Company remedied the underlying basis for plaintiff's communications with OSHA. Plaintiff knows of no other Quest employee who made complaints or was terminated for communicating with OSHA.

On November 14, 2006, OSHA sent Quest a letter, notifying Quest of a complaint by one of its employees, and OSHA cited a federal regulation pertaining to that complaint. On March 8, 2007, OSHA again notified Quest of another complaint by one of its employee, and OSHA set out the factual basis for the complaint. On April 6, 2007, OSHA notified Quest of a third complaint regarding unsanitary toilet facilities and lack of tepid water for hand washing. The letter cited federal regulations pertaining to those complaint.

At a departmental meeting in March 2007, shortly after plaintiff's second OSHA complaint, Keva Russell and Norm Lake stated they knew who had called OSHA. At one point,

stipulated to are accurate.

Jaime Krehbiel posted a memo in the imaging department that stated what a great job everyone was doing in spite of all the OSHA complaints. When plaintiff left Quest on June 28, 2007, she completed a Exit Interview Questionnaire, wherein she stated that she was unsure whether any practice or procedure of Quest or its employees violated the law or company policy.

### Company Attendance Policy

Quest maintains a general attendance policy (the "One Attendance Policy") respecting "absenteeism, lateness and early departure," which specifically states that "[e]mployees are accountable for notifying their department supervisor or designate, in accordance with established department guidelines when they are unable to report to work." Under the heading "Absence Without Notification," the policy lays out "counseling steps" for employees who "fail to notify their Supervisor of an absence." One absence without notification results in a "REPRIMAND" and the second absence without notification results in "VOLUNTARY RESIGNATION." The Policy was effective as of January 1, 2007. Plaintiff read and understood Quest's "One Attendance Policy."

### Two Corrective Counseling Actions

On April 16, 2007, plaintiff left the Lexena facility at 2:51 p.m. for a physical therapy session at 4:30 p.m., despite having previously been instructed by Russell, her direct supervisor, that she could not leave earlier than 4:00 p.m. for 4:30 p.m. appointments. On April 26, 2007,[22] Quest issued to plaintiff a Corrective Counseling Action because plaintiff ignored management's clear instruction and failed, as required, to notify either of her supervisors (Russell or Norm

---

[22]Plaintiff repeatedly states that the Corrective Counseling Action (Doc. 49, Ex. C) was issued on April 23, 2010. However, it appears that April 23 was the day the incident was "reported." The incident took place on April 16, 2007, and the Correction Counseling Action was issued on April 26, 2007. *See also* Doc. 47 at 5.

Lake, the Imaging Department Manager) before leaving the Lenexa facility before 4:00 p.m. on April 16, 2007.[23]  The Corrective Counseling Action stated that she was "[a]bsen[t] without notification constituting a reprimand."  The Counseling Action included a "Performance Improvement Action/Actions taken to correct deficiency," which specifically stated, "[i]f you are needing to leave any earlier or [your] schedule is changed, you need to contact or speak with your immediate management team."  Plaintiff reviewed the Corrective Counseling Action on April 26, 2007 with Russell and Lake.  Afterward, plaintiff signed it.  During their April 26 meeting, Russell and Lake further reminded plaintiff of the company's attendance policy and cautioned that any further violations could result in further corrective action, up to and including termination. Plaintiff did not experience any cut in pay or benefits, demotion or any other adverse employment action as a result of the Corrective Counseling Action.

Plaintiff, however, disputes the accuracy of the allegations in the Corrective Counseling Action.  She insists that she verbally notified Keva Russell when she left her work shift early on April 16, 2007.  After receiving the Corrective Counseling Action, plaintiff confronted Russell and asked Russell if she remembered speaking with plaintiff as plaintiff was leaving work on April 16, 2007.  Plaintiff insists that, when they crossed paths, Russell asked her if she was leaving for the day and plaintiff stated she was.  Russell did not remember asking plaintiff if she was leaving.  Plaintiff prepared a written response to the Corrective Counseling Action of April 26, 2007, setting forth her conversations with Russell before the reprimand (in giving notice) and after the reprimand (in confronting her), and sent it to Kristal Pate in human resources.

_____

[23]Plaintiff stipulated to this fact as stated in the Pretrial Order (Doc. 47 at 5).  While she does not dispute that the Corrective Counseling Action was issued as stated in this stipulated fact, she does dispute the reasons given for issuing the Corrective Counseling Action.

On June 22, 2007, Quest imposed mandatory overtime in plaintiff's Department. Plaintiff did not work the required overtime, and did not inform either Russell or Lake (or anyone else in her Department) before leaving work early on June 22, 2007. However, plaintiff contends that because of her FMLA status, she was advised that she could orally notify any one of several people of her intent to use intermittent FMLA leave, including Russell, Lake, Marilyn Swenson, Janet Furmanski, and Kristal Pate.[24] Via email on June 5, 2007, Kristal Pate informed Krehbiel, Lake, Russell, and Debra Loper that they should tell plaintiff she needed to use FMLA time for any unworked overtime, and she needed to report FMLA leave to her case manager (Erna Kolvick). Plaintiff claims that, on June 22, 2007, she in fact notified Erna Kolvick that she would not be working mandatory overtime that day by leaving a message on Kolvick's answering machine, and that she notified Janet Furmanski by leaving a written note with Darlene Watson, to be given to Furmanski who sat in an adjacent desk but was not present at the moment, stating "unable to work . . . this is an FMLA absence." Defendant argues that the company policy requires employees to notify their *department supervisor or designate* in accordance with company policy.[25] Rita Mohr testified at her deposition that there is no requirement at Quest that an employee give notice in writing of an intention to use FMLA time.

On June 28, 2007, the Company issued a second Corrective Counseling Action, stating that plaintiff had failed to work mandatory overtime on June 22, 2007, and had failed, per express instructions, to notify management and her case manager of any FMLA-related absences. The Corrective Counseling Action states that the incident involved "Work

---

[24]Plaintiff contends that she believed she was also permitted to notify Debra Loper, but the record does not support this statement.

[25]*See* Doc. 68 at 3 (emphasis added).

12

Performance," and the policy violated was an "[a]bsence without notification – 2nd instance." The "Disciplinary Step" applicable was "Immediate Dismissal." As a result, plaintiff was "considered to have voluntarily resigned her position effective immediately."

Rita Mohr, the Human Resources Director, reviewed the facts surrounding plaintiff's June 28, 2007 corrective counseling action with Pate, one of the Human Resources Generalists who reported to Mohr, before signing the form on June 28, 2007. Mohr determined that plaintiff's June 22, 2007 unexcused absence was her second violation of Quest's attendance policy in two months, and constituted a "voluntary resignation," resulting in immediate dismissal. Mohr was the sole decision-maker respecting plaintiff's June 28, 2007 separation from employment. Mohr did not speak with plaintiff about either incident.

Although plaintiff signed the Correction Counseling Action, she did so under protest. Plaintiff wrote on the form that she had given notice of her decision to leave before the first and second Counseling Action, that she had been using her FMLA status for over a year, and that she was not leaving Quest voluntarily but was "being told to leave on their choice."[26]

### Post-Employment Events

On July 6, 2007, plaintiff completed a "Claimant's Separation Statement" as part of an application for unemployment compensation benefits, disputing the grounds of her termination. On September 4, 2007, the Kansas Department of Labor approved plaintiff's request for unemployment benefits. On December 27, 2007, after her departure from Quest, plaintiff applied for employment with Pitney Bowes (plaintiff's subsequent employer). In her application, plaintiff wrote that her "reason for leaving" Quest was because she "decided to take

---

[26](Doc. 49, Ex. D at 3).

some time off."[27]  Above her signature, plaintiff certified that her answers on the employment application were "true and correct to the best of my knowledge" and that "[a]ny misrepresentation . . . shall be grounds for rejection of the application or for immediate discharge[.]"

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[28]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[29]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[30]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[31]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[32]  "[A] movant that will not bear the burden of persuasion at trial need not negate

---

[27]Defendant notes that she wrote these words in all capital letters, however, plaintiff's handwriting is consistently capital letters, thus, this fact is insignificant.

[28]Fed. R. Civ. P. 56(c)(2).

[29]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[30]*Id.*

[31]*Id.* at 251–52.

[32]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

the nonmovant's claim."[33]  The burden may be met "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[34]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[35]  The nonmovant may support its claims with affidavits, depositions, or answers to interrogatories.[36]  In limited circumstances, a verified complaint may be treated as an affidavit if it meets the requirements for affidavits set out in Rule 56(e).[37]  However, statements of "mere belief" must be disregarded.[38]  Therefore, the nonmoving party may not simply rest upon its pleadings to satisfy its burden,[39] and cannot avoid summary judgment by relying on ignorance of facts or mere suspicions, or by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[40]

When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not

---

[33]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325.

[34]*Id.*

[35]*Id.*

[36]Fed. R. Civ. P. 56(e).

[37]*Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (stating that a court may treat a verified complaint "as an affidavit for purposes of summary judgment" if it satisfies the requirements for affidavits set out in Rule 56(e), but is not required to give such leniency if "'the allegations contained in the pleadings are merely conclusory.'") (citations omitted).

[38]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

[39]*Anderson,* 477 U.S. at 256; *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[40]*Argo*, 452 F.3d at 1199 (citation omitted); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

make credibility determinations or weigh the evidence.[41]  Summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[42]

## III.    Discussion

Defendant moves for summary judgment on all four of plaintiff's claims, arguing that plaintiff cannot prove: (1) an adverse employment action or interference with protected rights, (2) a causal connection to plaintiff's exercise of her rights and an adverse employment action, or (3) pretext.  The Court will address these arguments as they apply to each claim in turn.

### A.    FMLA Claims

The FMLA entitles a qualified employee to up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[43]  In addition to the leave, an eligible employee is entitled to be restored to the same or an equivalent position upon return from leave.[44]  Plaintiff asserts her FMLA claims under two theories: (1) interference under § 2615(a)(1) of the FMLA, and (2) retaliation under § 2615(a)(2) of the FMLA.

#### 1.    FMLA Interference

Under the interference theory, if an employer interferes with an employee's FMLA-

---

[41]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[42]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[43]29 U.S.C. § 2612(a)(1)(D).

[44]*Id.* § 2614(a)(1)(A)-(B).

created right to a medical leave, it has violated the FMLA, regardless of its intent.[45]  In such a

case, the employee must demonstrate her entitlement to the disputed leave by a preponderance of

the evidence.[46]  The intent of the employer is immaterial.[47]  The burden is on the employer to

demonstrate the employee would have been terminated regardless of the request for, or taking of,

FMLA leave.[48]  However, the issue of whether notice was given "is separate from the analysis of

the *substantive* claim that an employer interfered with the exercise of an employee's FMLA

rights."[49]

### Notice

Plaintiff argues that she gave notice before leaving on April 16, 2007 and June 22, 2007

to persons she was directed to notify when taking FMLA leave.  Defendant responds that

plaintiff failed to give proper notice on both occasions, thus resulting in her voluntary

termination per company policy.  It is undisputed that plaintiff qualified for intermittent leave

under the FMLA.  Under federal regulations, an employee should give notice to the employer of

the need for FMLA leave within thirty days if the need for leave is foreseeable, or as soon as

practicable if the need for leave is unforeseeable.[50]  "As soon as practicable means as soon as

both possible and practical, taking into account all the facts and circumstances of the individual

---

[45]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[46]*Id.*; *see Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

[47]*Smith*, 298 F.3d at 960.

[48]*Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1180 (10th Cir. 2006).

[49]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004) (emphasis in original).

[50]29 C.F.R. §§ 825.302(a), 825.303(a).

case."[51]  However, an employee may be required to "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."[52]  For example, an employer's policy may require an employee to contact a specific individual to request leave.[53]  However, an employer may also waive standard notice requirements:

> An employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements.  If an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a).[54]

Based on the record, the Court finds that material issues of fact remain as to whether plaintiff provided notice of her intent to take FMLA leave on April 16, 2007 and June 22, 2007. It is undisputed that plaintiff was entitled to intermittent FMLA leave between November 13, 2006 and November 12, 2007.  Russell signed plaintiff's Family Medical Leave Application, and Kincaid approved plaintiff's request for intermittent leave for appointments, therapy, and illness between November 13, 2006 and November 12, 2007.  Thus, Russell was aware plaintiff would be taking intermittent leave during that time frame.

Plaintiff contends that, because of her FMLA status, she was told that she could orally

---

[51]*Id.* § 825.302(b).

[52]*Id.* §§ 825.302(c), 825.303(c).

[53]*Id.* §§ 825.302(c), 825.303(c); *Holmes v. The Boeing Co.*, 166 F.3d 1221, No. 98-3056, 1999 WL 9760, at *3 (10th Cir. 1999) (Table) ("The FMLA does not prohibit an employer from requiring its employees to give notice to specific company supervisors on the day the employee is going to be absent in a nonemergency situation").

[54]29 C.F.R. § 825.304(e).

notify any one of several people of her intent to use intermittent FMLA leave, including Russell, Swenson, Lake, Furmanski, and Pate.[55]  Plaintiff asserts that she spoke with Russell before she left on April 16, 2007.  While verbal notice is acceptable under 29 C.F.R. § 825.302, such notice must make the employer aware that the employee needs FMLA-qualifying leave.  A similar rule applies whether the notice is foreseeable or not:

> When an employee seeks leave for the *first time* for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA.  When an employee seeks leave due to a qualifying reason, *for which the employer has previously provided the employee FMLA-protected leave*, the employee must *specifically reference either the qualifying reason for leave or the need for FMLA leave*. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means.  An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying.[56]

Plaintiff asserts that, when she passed Russell at 2:51 p.m. on April 16, 2007, she told Russell she "was leaving."  However, plaintiff does not allege that she gave a reason for leaving or that she explained she was taking FMLA-qualifying leave.  Defendant denies that plaintiff gave any notice of her intent to leave at that time.  Plaintiff's first Corrective Counseling Action stated that plaintiff was to notify her "immediate management team" whenever she was leaving the premises before her shift was over.

---

[55]Plaintiff contends that she believed she was also permitted to notify Deb Loper, but the record does not support this statement.

[56]29 C.F.R. § 825.303(b) (emphasis added); *see also id.* § 825.302(c).

It is far from undisputed what kind of notice Quest required plaintiff to give. On June 5, 2007, Pate informed Krehbiel, Lake, Russell, and Loper that plaintiff would need to use FMLA time for any unworked overtime, and she would be required to notify her case manager (Erna Kolvick) whenever she was using FMLA time. Plaintiff asserts that, before leaving on June 22, 2007, she notified Kolvick via voicemail and notified Furmanski via a written note delivered through a co-worker. In plaintiff's second Corrective Counseling Action, she was advised that she failed to notify "management or her Case Manager" that she was leaving early.

It is unclear whether plaintiff mentioned she was taking FMLA-qualifying leave when she spoke to Russell on April 16, 2007, and it is disputed whether plaintiff left a voicemail for Kolvick or a written note for Furmanski stating that she was taking FMLA leave on June 22, 2007. On summary judgment, the Court cannot make credibility determinations or weigh the evidence. Based on the evidence presented, there are material issues of fact regarding what notice plaintiff was required to give and to whom, and whether such notice was actually given and/or received on June 22, 2007.[57] The factual issues surrounding the steps plaintiff took to provide notice preclude the entry of summary judgment.

### Prima Facie Case

To establish a claim under an interference theory, a plaintiff must show that: (1) plaintiff was entitled to FMLA leave; (2) an adverse action by the employer interfered with plaintiff's right to take FMLA leave; and (3) the employer's adverse action was related to the exercise or attempted exercise of plaintiff's FMLA rights.[58] If plaintiff has shown the first two elements of

---

[57] *See Moss v. Blue Cross, Blue Shield of Kan.*, 534 F. Supp. 2d 1190, 1200–1202 (D. Kan. 2008).

[58] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

interference, the burden shifts to the employer to prove the third element.[59]  Nevertheless, even when an employee requests and can demonstrate an entitlement to FMLA leave, she has no greater rights than the employee who continues to report to work.[60]  Thus, an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave request.[61]  The burden to demonstrate that "an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave" is on the defendant-employer.[62]

Defendant argues that plaintiff cannot make out a *prima facie* case of interference because:  (1) plaintiff was not subjected to an adverse action that interfered with her ability to take FMLA leave because she resigned voluntarily; and (2) any adverse action to which plaintiff was subjected was not causally related to her exercise of any FMLA rights.  Because defendant does not dispute that plaintiff was entitled to FMLA leave, plaintiff has met the first requirement.  Under the second requirement, plaintiff contends she experienced an adverse employment action when (1) defendant issued the Corrective Counseling Action against her for *attempting* to take FMLA-qualifying leave; and (2) she was she was subjected to involuntary dismissal as a result of taking FMLA leave.

The FMLA does not define "interference," but Department of Labor regulations provide that interference with the exercise of an employee's right includes not only refusing to authorize

---

[59]*See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

[60]*See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

[61]*See id.*

[62]*Metzler*, 464 F.3d at 1180 (citation omitted); *see also* 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

FMLA leave, but discouraging an employee from using such leave.[63]   If an employer provides a

powerful disincentive for taking FMLA leave, it constitutes interference.[64]  Generally, "[i]n order

to satisfy the second element of an interference claim, the employee must show that she was

prevented from taking the full [twelve] weeks' of leave guaranteed by the FMLA, denied

reinstatement following leave, or denied initial permission to take leave."[65]  The employer's

intent is irrelevant.[66]

Plaintiff alleges that she received two Correction Counseling Actions in response to her

FLMA leave and was subsequently dismissed, and she would not have been subjected to these

actions "but for" her decision to take FMLA leave on April 16 and June 22.  Defendant insists

that plaintiff's "separation" from Quest was "voluntary."[67]  Plaintiff, however, opposed this

characterization from the day she was terminated.  In viewing the evidence in the light most

favorable to plaintiff, there is a genuine issue of material fact about whether defendant's

termination of plaintiff is an adverse action sufficient to meet the second element of an

---

[63]29 C.F.R. § 825.220(b).

[64]*Mardis v. Cent. Nat'l Bank & Trust of Enid*, 173 F.3d 864, 1999 WL 218903, at *2 (10th Cir. Apr. 15, 1999).

[65]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citation omitted).

[66]*Satterlee v. Allen Press, Inc.*, 274 F. App'x 642, 645 (10th Cir. 2008).

[67]Defendant cites the following in support of its argument that plaintiff's separation was "voluntary": standard language in the Corrective Counseling Action used by defendant; plaintiff's explanation in an application to a subsequent employer as to why she left Quest; and plaintiff's own confused deposition testimony.  Plaintiff, however, asserts that she was terminated.  Upon review of plaintiff's deposition testimony, plaintiff was asked to review the contents of the Corrective Counseling Action, rather than to give an independent statement of her reason for leaving.  Most importantly, at the time plaintiff received the second Corrective Counseling Action, plaintiff handwrote: "I am not voluntarily leaving her [sic] position held here at Quest after 7 ½ years of service.  I am being told to leave on their choice."  (Doc. 49, Ex. D at 3).  Perhaps most tellingly, defendant argues that plaintiff left "voluntarily" and alternatively argues that Rita Mohr was the "sole decision-maker."  Because this is not a case involving plaintiff's resignation, it is far from "undisputed" as to whether plaintiff left Quest voluntarily.

interference claim.  Therefore, the burden shifts to defendant to show the employer's adverse action was not related to the exercise or attempted exercise of plaintiff's FMLA rights.

Defendant argues plaintiff was terminated because she did not properly report her absences on two occasions, and that the FMLA does not exempt employees from compliance with the employer's attendance and reporting requirements.[68]  "A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."[69]  Also, "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."[70]

Plaintiff contends that a causal connection exists because she would not have been dismissed had she not attempted to take FMLA leave.  As noted previously in the discussion on notice, it remains a material issue of fact whether plaintiff left a voicemail for Kolvick or a hand-written note for Furmanski on June 22, 2007, and whether this notice satisfied the instructions she had been given.  Defendant's only stated-basis for plaintiff's termination was her two absences on April 16 and June 22, which plaintiff claims were part of her FMLA leave. Defendant has given no justification for terminating plaintiff apart from these instances.[71]

---

[68]*See, e.g., Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004).

[69]*Bones*, 366 F.3d at 877–78 (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).

[70]*Gunnell*, 152 F.3d at 1262.

[71]*See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1289 (10th Cir. 2007) (noting the undisputed evidence that the employer was struggling to maintain profitability and plaintiff's serious work performance problems came to light during her absence); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 n.10 (10th Cir. 2006) (noting undisputed evidence that plaintiff received a counseling document advising her that "failure to improve her attitude and meet important deadlines could lead to her termination").

Because plaintiff alleges she would not have been terminated absent her "request for or taking of FMLA leave," a jury question remains,[72] and the Court declines to grant defendant's motion for summary judgment on the interference claim.

### 2. FMLA Retaliation

Plaintiff contends that she suffered unlawful retaliation when she was given two Corrective Counseling Actions and was terminated by defendant. Retaliation claims under the FMLA based on circumstantial evidence are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[73] Under this analysis, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation.[74] If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action.[75] The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.[76]

#### *Prima Facie Case*

To state a *prima facie* case of retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.[77] The third element requires some showing of "retaliatory motive" or bad

---

[72]*Metzler*, 464 F.3d at 1181 n.10.

[73]411 U.S. 792 (1973); *Metzler*, 464 F.3d at 1170.

[74]*Metzler*, 464 F.3d at 1170.

[75]*Id*. at 1171.

[76]*Id*.; *see also Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

[77]*Metzler*, 464 F.3d at 1171 (citation omitted).

intent on the part of the employer.[78]

Plaintiff's retaliation theory is the same as her interference theory: defendant issued two Corrective Counseling Actions and terminated plaintiff in retaliation for her request for FMLA leave.[79]  Defendant responds that it was only enforcing its attendance policy.  For the reasons set forth on the interference claim, the Court finds that there are genuine issues of material fact that are in dispute about whether plaintiff provided notice sufficient to make defendant aware that she was taking FMLA-qualifying leave on the days she was alleged to have been absent without notice.  On the basis of the above analysis, and viewing the facts in the light most favorable to plaintiff, the Court finds the first two elements are met.

To establish the third element of a prima facie case of retaliation, plaintiff must show a causal connection between her protected activity of taking FMLA leave and defendant's decision to terminate her employment.[80]  The "critical inquiry" at this prima facie stage is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination."[81]  The Tenth Circuit has long-recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive."[82]  The court has also

---

[78]*Campbell v. Gambro Heathcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

[79]*Id.* at 1287–88 (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1136–38 (10th Cir. 2003)).  In contrast to an interference claim, "a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work."  *Id.*  Here, plaintiff returned to work for a number of days, but was terminated on the basis of an absence without notice occurring when she took FMLA leave.

[80]*Metzler*, 464 F.3d at 1171 (citation omitted).

[81]*Id.* (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (quotations omitted)).

[82]*Id.* (citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)).

emphasized, however, that a plaintiff may rely on temporal proximity alone only if "the termination is *very closely* connected in time to the protected activity."[83]

Here, plaintiff's April 16 absence (with or without notice) was followed by a Corrective Counseling Action ten days later. Plaintiff's June 22 absence (with or without notice) was followed by a Corrective Counseling Action and "voluntary dismissal" only six days later. The Court finds this temporal proximity is sufficient to establish causation.

### *Legitimate, Nonretaliatory Reason*

Having established her *prima facie* case, the burden under *McDonnell Douglas* shifts to defendant to demonstrate a legitimate, nonretaliatory reason for its termination decision.[84] Defendant asserts that it terminated plaintiff because she failed to comply with company policy requiring employees to notify their supervisor when they will be absent from work. The Court finds that defendant has articulated a legitimate, nonretaliatory reason for terminating plaintiff's employment.

### *Pretext*

To defeat summary judgment, plaintiff must show that there is a genuine dispute of material fact as to whether defendant's explanations for terminating her employment are pretextual.[85] To raise a fact issue of pretext, plaintiff must present evidence of temporal proximity plus circumstantial evidence of retaliatory motive.[86] A plaintiff can show pretext by

---

[83]*Id.* (quoting *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original)).

[84]*Id.* (citing *Doebele*, 342 F.3d at 1135).

[85]*Id.* (citing *Mickelson v. New York Life Ins. Co.* 460 F.3d 1304, 1318 (10th Cir. 2006)).

[86]*Id.* (citing *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206-07 (10th Cir. 2000)).

pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence"[87] and "infer that the employer did not act for the asserted non-discriminatory reasons."[88]  While this burden is not onerous . . . it is also not empty or perfunctory."[89]  A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.[90]

Defendant argues that plaintiff has failed to show retaliatory animus by any of her supervisors.  More specifically, defendant argues that Rita Mohr was the sole decision-maker in plaintiff's termination and did not act with retaliatory animus.  Plaintiff responds that Quest's justifications for plaintiff's termination were false and inconsistent.  Plaintiff insists she gave notice of her need for FMLA leave on April 16 and June 22.  Although defendant provides no sworn testimony by any of the individuals plaintiff allegedly notified, the Corrective Counseling Action states that plaintiff did not give notice on those dates.  Plaintiff notes that the June 28 Corrective Counseling Action stated her "dismissal" was "voluntary," which plaintiff argues is

---

[87]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[88]*Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004).

[89]*Morgan*, 108 F.3d at 1323-24.

[90]*Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

false.  It also stated that the "incident" involved "work performance," although plaintiff's employer informed her it was due to a violation of the company's "attendance policy."  Although defendant asserts that plaintiff's separation was "voluntary," it simultaneously insists that Mohr was the "sole decision-maker" in plaintiff's termination.  Finally, plaintiff notes that her instructions about the kind of notice she was expected to give to her supervisors, her case manager, and other named individuals when taking FMLA leave, was inconsistent with written company policy as well as being internally inconsistent.  Thus, plaintiff argues that these inconsistencies raise an inference of pretext.

Defendant argues that plaintiff must make some positive showing of retaliatory "animus."  This arguments appears to advocate for a pretext-plus standard.  However, the Tenth Circuit has rejected such a standard: "[A] showing of pretext, in itself, is all that is required to raise the inference of discriminatory intent, and no additional showing of actual discriminatory animus is necessary."[91]  "Judgments about intent are best left for trial and are within the province of the jury."[92]  Plaintiff has produced sufficient evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions" in Quest's proffered reason for plaintiff's termination to allow a reasonable factfinder to reject its explanation and infer retaliation.[93] Because a jury may infer discriminatory animus from a simple showing of pretext, summary

---

[91] *Lundien v. United Airlines*, 242 F.3d 389 (Table), 2000 WL 1786579, at *4 (10th Cir. 2000); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) ("because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination"); *Randle v. City of Aurora*, 69 F.3d 441, 451–453 & nn.15–18 (10th Cir. 1995); *Hare v. Denver Merch. Mart, Inc.*, 255 F. App'x 298, 305 (10th Cir. 2007).

[92] *Randle*, 69 F.3d at 453.

[93] *See Lundien*, 2000 WL 1786579, at *8.

judgment is inappropriate on this claim.[94]

The Court has found that there is a genuine issue of material fact regarding the type of notice plaintiff was required to give on April 16 or June 22, whether plaintiff gave notice to Russell on the first occasion, or whether plaintiff gave notice to Furmanski or Kolvick on the second occasion. Viewing the evidence in the light most favorable to plaintiff, plaintiff was left with something of a moving target. Between the first and second Corrective Counseling Action, Pate asked certain individuals, via email, to advise plaintiff of a change in the notice requirements—plaintiff was subsequently expected to notify her case manager as well as her supervisor whenever taking FMLA leave, and she would be required to take FMLA leave for all unworked overtime. Plaintiff alleges that, before then, she was instructed that she could give oral notice to any of several named individuals when taking FMLA leave, and she alleges that, on June 22, she gave notice to one of those people as well as her case manager.

Additionally, plaintiff has shown that Mohr did not do an independent investigation of the circumstances.[95] She did not speak with plaintiff about the allegations in the first or second Corrective Counseling Action before signing the Action that terminated plaintiff's employment.[96] There is no evidence that Russell, Furmanski, or Kolvick spoke directly with

---

[94]*Randle*, 69 F.3d at 451.

[95]Defendant repeatedly argues that, not only was Rita Mohr the "final decision-maker respecting plaintiff's employment," but she "did not know plaintiff, let alone her FMLA history or present status, at the time she approved her separation from employment." (Doc. 49 at 19). Without record support, defendant asserts "it is undisputed that Mohr, the sole decision-maker respecting plaintiff's employment, did not know plaintiff's FMLA, workers' compensation or OSHA-related history." (Doc. 49 at 25). Defendant did not make this statement in its statement of facts and does not cite to any record evidence that would support this statement.

[96](Doc. 82, Ex. A at 100–108); *see Defreitas v. Horizon Inv. Mgmt.*, 577 F.3d 1151, 1161 (10th Cir. 2009) (noting that "it might well strike the jury as passing strange that Mr. Terry would fire Ms. DeFreitas based on comments by subordinates without first asking her for her version of events").

Mohr, and yet their reports regarding whether plaintiff gave notice of her leave had a direct impact on the two Counseling Actions plaintiff received. Mohr relied exclusively on Pate's representation of the facts and circumstances leading up to both actions.[97] There is no record evidence, other than hearsay, as to what investigation Pate actually performed or what report Pate gave. Mohr was unable to recall what investigation was done. Such inconsistency is sufficient to allow a reasonable jury to conclude that plaintiff's termination was pretextual. Thus, the Court finds there is a genuine issue of material fact as to whether plaintiff was retaliated against for exercising FMLA-qualifying leave.[98]

## B. Retaliation Claims Under Kansas Common Law

"Kansas generally follows the employment-at-will doctrine, meaning that employment is terminable at will by either the employer or the employee for any reason or for no reason at all."[99] There are exceptions, however, that prohibit an employer from firing an employee out of retaliation, including whistleblower retaliation and workers' compensation retaliation. Plaintiff

---

[97]*Id.*

[98]Plaintiff suggests there is also a genuine issue of material fact as to whether Mohr's employment decision was the product of "subordinate bias." The Tenth Circuit has held that, "under certain circumstances, a defendant may be held liable for a subordinate employee's prejudice even if the manager lacked discriminatory intent." *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 485 (10th Cir. 2006) (quoting *English v. Colo. Dep't of Corrs.*, 248 F.3d 1002, 1011 (10th Cir. 2001)). First, plaintiff must raise a genuine issue of material fact "concerning the bias of the subordinate." *Id.* at 488. Then, "[t]o prevail on a subordinate bias claim, . . . the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action." *Id.* at 487. An employer can avoid the causal link "by conducting an independent investigation of the allegations against an employee"; an investigation as basic as "asking an employee for his version of events may defeat the inference" of causation. *Id.* at 488.

Here, plaintiff has not identified who the "subordinate" would be in this case, or what "bias" the subordinate was expressing when making reports or recommendations to Mohr. It is unclear to the Court whether this theory properly applies in this case. The Court finds that defendant's inconsistencies regarding plaintiff's notice requirements and the disputed facts about whether plaintiff complied with those requirements raise a genuine issue of material fact that is more appropriately left for the jury.

[99]*Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (citing *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 846 (1987)).

alleges both claims, and defendant moves for summary judgment on both.

### 1.    OSHA Whistleblower Retaliation

The Kansas Supreme Court has recognized retaliatory discharge for whistleblowing as an actionable tort.[100]  A whistleblowing retaliatory discharge action is a public policy exception to the employment-at-will doctrine.[101]  Kansas courts have adopted the *McDonnell Douglas*[102] burden-shifting approach for analyzing retaliatory discharge claims.[103]  Plaintiff must first establish a *prima facie* case, which creates a presumption of retaliation.[104]  To establish a *prima facie* case for whistleblowing, plaintiff has the burden of proving:

> (1) a reasonably prudent person would have concluded [defendant] was engaged in activities in violation of the rules, regulations, or law pertaining to public health, safety, and general welfare; (2) [defendant] had knowledge of plaintiff's reporting of such violation prior to discharging him; and (3) he was discharged in retaliation for making the report.[105]

"Furthermore, '[t]he whistleblowing must have been done out of good faith rather than from a corrupt motive such as malice, spite, jealousy, or personal gain.'"[106]  "Once the employee establishes a *prima facie* case, the defendant must come forward with legitimate, nonretaliatory

---

[100]*Ortega v. IBP, Inc.*, 874 P.2d 1188, 1192 (Kan. 1994).

[101]*Id.* at 1194.

[102]*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also  Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

[103]*Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1294 (10th Cir. 2002) (citing *Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n*, 35 P.3d 892, 898 (Kan. 2001)).

[104]*See, e.g.*, *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 821 (Kan. 2003).

[105]*Glover v. NMC Homecare, Inc.*, 106 F. Supp. 2d 1151, 1169 (D. Kan. 2000) (citing *Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1988)).

[106]*Id.* (quoting *Lierz v. Coca Cola Enters., Inc.*, 36 F. Supp. 2d 1295, 1301 (D. Kan. 1999)).

reasons for its actions."[107]  If the employer meets this burden, the burden then shifts back to the plaintiff, and she "'must assert specific facts establishing a triable issue as to whether the employer's reasons for discharging is a mere cover-up or pretext for retaliatory discharge.'"[108]

"Under Kansas law, a retaliatory discharge case must be proved by a preponderance of the evidence, but the evidence must be clear and convincing in nature."[109]  Clear and convincing means "highly probable."[110]  This burden comes into play at the pretext stage.[111]  While a plaintiff need not meet this heightened standard on summary judgment in the state's own courts,

> [A] plaintiff in federal court who opposes a summary judgment in a retaliatory discharge case based on Kansas law must set forth evidence of a clear and convincing nature that, if believed by the ultimate factfinder, would establish that plaintiff was more likely than not the victim of illegal retaliation by her employer.[112]

Plaintiff claims she was wrongfully discharged in retaliation for complaining about alleged violations of OSHA regulations at defendant's Lenexa facility.  Defendant argues that (1) no reasonably prudent person would have believed Quest was violating any rules, regulations, or laws regarding public health, safety, and general welfare, (2) defendant did not know of plaintiff's complaints, and (3) plaintiff was not discharged, she left voluntarily.

First, defendant argues, without citing to any legal support, that plaintiff's OSHA

---

[107]*Conrad v. Bd. of Johnson County Comm'rs*, 237 F. Supp. 2d 1204, 1266 (D. Kan. 2002) (citing *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002)).

[108]*Id.* (quoting *Foster*, 293 F.3d at 1193).

[109]*Eckman v. Superior Indus. Int'l, Inc.*, No. 05-2318, 2007 WL 1959199, at *6 (D. Kan. July 2, 2007) (citing *Ortega v. IBP, Inc.*, 874 P.2d 1188, 1198 (1994)).

[110]*In re B.D.-Y.*, 187 P.3d 594, 606 (Kan. 2008).

[111]*Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002).

[112]*Id.* at 1195; *see also Eckman*, 2007 WL 1959199, at *6 (citing *Ortega*, 874 P.2d at 1198).

complaints were not ones a reasonably prudent person would have believed violated any rule, regulation or law. Plaintiff has provided three letters from OSHA notifying defendant of plaintiff's anonymous complaints and citing to federal regulations related to those complaints. Viewing the evidence in the light most favorable to plaintiff, a jury could find that plaintiff's concerns were reasonable.[113] Defendant does not dispute that plaintiff made the complaints in good faith, therefore, the Court will assume she did.

Next, defendant argues Mohr had no knowledge of plaintiff's complaints. It is undisputed that plaintiff made three OSHA complaints regarding the Lenexa facility, and that some of plaintiff's supervisors, Russell and Lake, believed they knew who made those complaints. However, neither supervisor stated *who* they thought was making OSHA complaints, and plaintiff asserts she never told anyone at Quest of her complaints. Thus, plaintiff's assumption that Russell and Lake had knowledge she was filing complaints is merely speculative. Furthermore, the fact that Krehbiel posted a memo noting that OSHA complaints were being made (by an unidentified individual) does not demonstrate retaliatory intent toward plaintiff. In fact, Krehbiel had no part in the Corrective Counseling Actions plaintiff subsequently received.

Assuming, *arguendo*, plaintiff's supervisors knew of plaintiff's OSHA complaints, defendant argues there was no evidence plaintiff's termination was related to these OSHA complaints. "Proximity in time between the claim and discharge is a typical beginning point for

---

[113]*See Eckman*, 2007 WL 1959199, at *7 (finding "a reasonably prudent person would have thought the lack of any emergency safety lighting in the fettling area was a violation of a rule or law pertaining to safety conditions in the work environment"); *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 297 (Kan. 1998) (holding that "the remedy provided by OSHA § 11(c) [29 U.S.C. § 660(c) (1994)] for employees who allege that they have been discharged in retaliation for filing complaints under that statute [does not] preclude the filing of a Kansas common law wrongful discharge claim under Kansas's public policy exception to at-will employment.").

proof of a causal connection."[114]  If temporal proximity is not close, "the claimant will need to produce additional evidence in order to show causation."[115]  Plaintiff's last OSHA complaint was made on April 26, 2007, but plaintiff was terminated two months later, on June 28, 2007. This temporal proximity raises only a weak inference of causation.[116]

Plaintiff has failed to establish all the elements of a *prima facie* case, and the Court finds summary judgment is appropriate on this claim.  However, assuming that plaintiff can establish a *prima facie* case, the Court also finds that plaintiff has not shown defendant's reasons were pretextual.

### Pretext

Plaintiff's employer asserts that the Counseling Actions were based on plaintiff's absences without notice on April 16 and June 22, 2007.  At this point, the burden shifts to plaintiff to show that defendants' stated reason is a pretext for whistleblower retaliation by a preponderance of the evidence that is clear and convincing in nature.[117]  Plaintiff "must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge."[118]  Plaintiff, however, has not produced any additional facts or circumstantial evidence, beyond temporal proximity, to show that the reasons

---

[114]*Rebarcheck v. Farmers Coop. Elevator & Mercantile Ass'n of Dighton, Kan.*, 35 P.3d 892, 899 (Kan. 2001).

[115]*Id.*

[116]*See, e.g., Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient.").  In *Meiners*, the court also noted that two months and one week is "probably too far apart . . . to establish causation by temporal proximity alone."  *Id.*

[117]*Foster v. Alliedsignal Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002).

[118]*Id.* (quoting *Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002)); *see also Bergersen v. Shelter Mut. Ins. Co.*, 229 F. App'x 750, 755 (10th Cir. 2007).

for her termination were pretext to cover-up whistleblower retaliation.

Even though plaintiff alleges her supervisors, Russell and Lake, were aware that she had made OSHA complaints, she has not shown any relationship between her OSHA complaints and her two Corrective Counseling Actions or her subsequent "termination." Plaintiff has not pointed the Court to facts showing that defendant's decision to terminate her on June 28, 2007 was pretext for retaliation against her for making OSHA complaints. In fact, her OSHA complaints do not appear to have any bearing on the question of whether she gave notice of her absences on April 16 and June 22. Thus, the Court grants summary judgment to defendant on plaintiff's claim for whistleblower retaliation.

### 2. Workers' Compensation Retaliation

Kansas law also prohibits an employer from firing an employee in retaliation because either (1) the employee filed a workers' compensation claim; or (2) the employee has not yet filed a workers' compensation claim but "is absent from work due to a work-related injury and might file a workers' compensation claim."[119] Whether the employee has already filed a workers' compensation claim or not, "any absences caused by [an employee's] work-related injury should not be counted against the employee by her employer."[120]

The plaintiff's burden in opposing a motion for summary judgment on her workers' compensation retaliation claim is to prove she was terminated "based on, because of, motivated by or due to" the defendant's intent to retaliate.[121] The plaintiff need not prove this retaliatory

---

[119]*Foster*, 293 F.3d at 1192 (citing *Murphy v. City of Topeka*, 630 P.2d 186, 192 (Kan. Ct. App. 1981); *Coleman v. Safeway Stores, Inc.*, 752 P.2d 645, 652 (Kan. 1988)).

[120]*Id.* (citing *Coleman*, 752 P.2d at 652; *Ortega v. IBP, Inc.*, 874 P.2d 1188, 1191 (Kan. 1994)).

[121]*Id.* (internal quotations and citations omitted).

intent with direct evidence nor establish that it was the only reason behind her discharge.[122] Retaliatory discharge cases typically rely on circumstantial evidence to prove the employer's unlawful intent in discharging an employee.[123] Consequently, Kansas courts apply the burden-shifting framework of *McDonnell-Douglas* in workers' compensation discharge cases.[124]

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she sustained an injury for which she could assert a future claim for benefits or file a claim for workers' compensation benefits; (2) the employer had knowledge of plaintiff's compensation claim, or the fact that she had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.[125] Upon such a showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for terminating the employee.[126] Once this is done, plaintiff must prove by a preponderance of the evidence that it is "highly probable" the reasons offered by the employer were pretextual.[127] Temporal proximity between the protected activity and the adverse action, if sufficiently close, may establish causation in the *prima facie* case, but it is not sufficient—standing alone—to raise a genuine

---

[122]*Id.*

[123]*Id.*

[124]*Gonzalez-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility*, 101 P.3d 1170, 1177 (Kan. 2004) (citing *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 35 P.3d 892, 898–99 (Kan. 2001)).

[125]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *Foster*, 293 F.3d at 1193.

[126]*Foster*, 293 F.3d at 1192.

[127]*Id.* at 1194; *Bausman v. Interstate Brands, Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Ortega*, 874 P.2d 1188, 1197–98 (Kan. 1994)). In 2008, the Kansas Supreme Court overruled *Ortega*'s definition of "clear and convincing" and re-defined it as "that which is sufficient to establish the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 187 P.3d 594, 601 (Kan. 2008).

issue of pretext.[128]

### *Prima Facie Case*

Once again, defendant argues (1) plaintiff left Quest voluntarily, (2) there was no causal connection between her workers' compensation claims and her separation, and (3) plaintiff cannot show pretext. As discussed above, the Court finds a material issue of fact surrounding whether plaintiff's separation was voluntary. Assuming plaintiff was terminated, plaintiff has not shown that any of her supervisors, aside from Jaime Krehbiel, knew of her workers' compensation claims. Even if the Court assumes Mohr and others knew plaintiff's leave was for a work-related injury, plaintiff has not shown causation or pretext in light of her workers' compensation retaliation claim.

It is undisputed that Quest never discouraged plaintiff from filing workers' compensation claims, she filed a total of three workers' compensation claims, and she was never disciplined as a result of her claims. The last workers' compensation claim filed before her termination was on April 4, 2006, nearly twelve months before her first Corrective Counseling Action (April 16, 2007) and nearly fourteen months before the second Corrective Counseling Action (June 28, 2007) whereby her employment ended. Thus, there is no temporal proximity between plaintiff's workers' compensation activity and the employer's adverse employment action. Furthermore, although plaintiff suffered a work-related injury, it appears this injury was diagnosed in the fall of 2006.[129] Plaintiff has not produced any additional evidence that she intended or expressed an

---

[128]*Hystein v. Burlington N. Santa Fe Ry.*, 372 F. Supp. 2d 1246, 1254–55 (D. Kan. 2005) (citing in part *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2005)).

[129]Larry Kincaid approved plaintiff's request for FMLA leave on January 9, 2007. *See* Doc. 63. This was more than three months before her April 26, 2007 Corrective Counseling Action and more than five months before her June 28, 2007 dismissal.

intention to file *another* workers' compensation claim on the basis of this injury prior to receiving the Corrective Counseling Actions. Thus, there is no genuine issue of material fact on the issue of causation.

### Pretext

Nevertheless, assuming plaintiff produced sufficient evidence to establish a *prima facie case*, she has failed to produce any evidence of pretext. In response to defendant's non-retaliatory reason for plaintiff's termination, plaintiff alleges her absences on April 16 and June 22 were due to a work-related injury. However, she has not identified any circumstantial evidence that would establish an inference of retaliation based on her workers' compensation claims—past, present or future. Plaintiff notes a single remark by Krehbiel about plaintiff's injury some time during the fall of 2006. However, plaintiff does not argue that Krehbiel had any role in the two Corrective Counseling Actions or in her dismissal more than six months later as a result of those Counseling Actions. Furthermore, plaintiff has not pointed the Court to any evidence that the decision-makers felt plaintiff should be terminated because she had filed workers' compensation claims or because she might file future workers' compensation claims.[130] Plaintiff's thin evidence in support of this claim, "if believed by the jury, is insufficient to demonstrate that her discharge was based on, because of, motivated by, or due to defendant's intent to retaliate."[131]

Although plaintiff need not show workers' compensation retaliation was the "*sole* motive

---

[130]*See Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1257 (D. Kan. 2007); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) ("To establish the requisite causal connection, a plaintiff must prove an unlawful intent on the part of the employer to terminate her *because* she had filed a workers' compensation claim or had sustained a work-related injury for which she might file such a claim.").

[131]*Bones v. Honeywell Int'l, Inc.*, 223 F. Supp. 2d 1203, 1213 (D. Kan. 2002).

or reason for the termination,"[132] plaintiff has not shown that it was even "a" motive in her termination,[133] and certainly not by a preponderance of the evidence that is clear and convincing.[134]  Like her OSHA complaints, her workers' compensation claims in 2002, 2005 and 2006, do not appear to have any bearing on the question of whether she gave proper notice of her need for FMLA-qualifying leave on April 16 and June 22, 2007.  As plaintiff has failed to produce any evidence that would raise a genuine issue of material fact on the issues of causation or pretext under this claim, the Court grants summary judgment to defendant.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Quest Diagnostic's Motion for Summary Judgment (Doc. 48) is granted in part and denied in part.  It is granted on plaintiff's OSHA whistleblower retaliation and workers' compensation retaliation claims.  It is denied on plaintiff's FMLA interference and FMLA retaliation claims.

**IT IS SO ORDERED.**

Dated: May 14, 2010

                                          S/ Julie A. Robinson                    
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[132]*See Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1196 (10th Cir. 2002) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1298 (10th Cir. 1998)).

[133]*Id.* (holding that plaintiff's termination within a week after the employer received notice that she had filed a workers' compensation claim provided at least "an inference of retaliatory intent").

[134]*Id.* at 1194.